Your Honor, it's Davina Chan again, this time for Rolando Silva-Romero. What distinguishes this case most from the case just argued is the paucity of the district court's findings of facts. Whereas in Mr. Hernandez's case, the argument is that the facts that the district court found didn't support the court's legal conclusions, here, the court really didn't find any facts. The court said that Mr. Romero didn't have standing, but it's clear that the court only considered Mr. Romero's declaration and didn't look at all the evidence presented at the suppression hearing, including the evidence that the government presented that Mr. Romero had the keys to the car, was in the driver's seat, and, in fact, claimed ownership of the car. The district court also held that even if Mr. Romero did have standing, that there was reasonable suspicion. I'm sorry, I mean, there was evidence out of the way, but why wasn't the district court entitled to find no standing? Because he had, there was evidence that he disowned the car. We have lots of cases that say even if you see the guy holding the suitcase and he puts it down, if he then says, oh, no, no, that wasn't my suitcase, he's abandoned it, and the district court can find that he has no standing. I agree that if the district court had found abandonment, that the district court would have been entitled to find abandonment. But the district court did not find abandonment. Well, but finding lack of standing hasn't implicitly found abandonment. Isn't that really what the district court was doing? It may not have used the word abandonment, but there's no other way in which it could find lack of standing except by the district court. Well, actually, the district court didn't say anything that would make it look like he had found abandonment. In fact, what he did was he said, I've looked at the declaration very carefully, the defendant's declaration, not the government's declaration, the defendant's declaration. The defendant's declaration contained no information whatsoever which would lead the court to believe that Mr. Romero had abandoned the vehicle. The defendant's declaration simply sets forth the facts of the stop. The government's declaration is the declaration that talks about both abandonment perhaps, although it's never worded as abandonment and was never argued in district court as abandonment, but also sets forth all the facts which would lead to the conclusion that Mr. Romero did have standing, that he was in the driver's seat of the car when the stop occurred, that he had the keys to the car in his pocket, and that later during the time when the property was being inventoried, he admitted ownership of the car. So he In his statement, what does he say? He just says, I don't own the car or what? What did the district court rely on? He doesn't say either way in his own declaration. What was it that caused the district court? The district court, as I read it, said he had no standing because he said he didn't own the car? Or is it what was it exactly? I believe that what the district court said was that I've looked at the defendant's declaration carefully, and I see he doesn't use the word, but I see no affirmative statement of ownership or any possessory interest. And because there's no ownership or possessory interest, the law of the Ninth Circuit holds that there is no standing. Well, I'm just kind of wondering if if what the district court had to go on was the defendant gets out and says, well, I not only don't own this car, I have no possessory interest in it. No, that doesn't sound like the sort of thing people say, right? If he just says, no, I'm not the owner of this car. I'm not sure that deprives somebody of standing if they've been lent the car or borrowed the car or. And that's precisely why this case is so different from the previous case. We don't know what the district court was thinking. We don't know if the district court was thinking, well, I've cobbled together all the statements which the defendant made throughout the encounter, and he was entitled to credit the officer's version of those statements. And I find by cobbling together all those statements that standing has been abandoned. But the district court did not do that. The district court said, I looked at the declaration of the defendant and there's no affirmative showing of standing. Therefore, there's no standing. And as I said, certainly if the district court had gone through the record and articulated that the property had been abandoned, they would be entitled to do that. Are we required to uphold the district court on any basis supported by the record? Well, there seems to be a split within the circuit. It's. Oh no, not our circuit. You must be, you must be thinking of another circuit. There are at least two cases, and I cited them in my briefs, Prieto Villa and Carvajal, which say that Rule 12, which says that the district court must set forth the essential factual findings in the record, and that doesn't need to be in writing, it could be orally and transcribed, that that is mandatory. There are two cases that state that that is mandatory. And in both those cases, the issue on appeal was very fact intensive. And the court of appeals said, we are not going to comb through the record and try to find every fact that we could cobble together to support the district court's ruling. We're going to remand. In this particular case, the fact that we're discussing. Remand. For the district court. Yes. I mean, certainly one could do that. But here's pretty clear. The question is, do we have to remand? You're saying we have to remand. And to me, it strikes me as somewhat futile to do that because it seems pretty clear that what the district court was doing is finding abandonment or certainly there's plenty of evidence, but what the district court says is, look, he has not served any claim in this car. The district court is familiar with the facts. It knew that the guy had been sitting in the car. It knew that that he got out. And he said, look, he doesn't have any interest in the car. So no standing. Well, the district court doesn't use the magic word abandonment. He had an interest because he was in the car and had the key and then abandoned it. So he says he doesn't have anything to do with the car. I'm taking mother's word. Your Honor, the government never argued abandonment below. So it's not as if the government said, laid out the analysis that this court. To have abandonment, you certainly have to have an initial finding that he did, in fact, have some sort of interest to begin with, to abandon. Correct. The district court didn't make that finding either. Correct. So we have facts from which you could infer that he had an interest to begin with, which he abandoned. And you also have facts from which you could find that he then abandoned it. District court doesn't make a finding on one. It doesn't make finding another. What you want us to do is you want us to find he had an initial interest and then force the district court to then find abandonment. Why can't we just go ahead, if we're going to go to the trouble of finding that he had an initial interest, why can't we just go ahead and force the district court to find abandonment, too? It's just as easy. I'm not asking this court to find that he had an interest. If we don't find that, then you lose, because we have a district court finding of lack of standing. Unless you somehow establish that he had an original interest in the car, based on something on the record, there's no finding that he did. Right. And the district court should make that finding in the first instance. If the district court had said, I've reviewed all the facts, all the testimony, all the evidence, all the declarations, and I credit Mr. Romero to the extent that he's declined any interest in this car, and I credit, if the court had done all that, then I believe that the court's findings of fact would be entitled to deference, and they are not clearly erroneous. But the district court did not do that. The district court said, I've read the declaration, the defendant's declaration. Apparently, the district court was under the impression that the defendant had to set forth and that he could not look at the evidence presented by the government. And their case law is clear, that you have to look at all of the evidence. In Singleton, this court said, yes, the defendant could show standing by saying that the government's evidence was credible. In Singleton, the defendant said he didn't live in the backhouse. And the government said he did live in the backhouse. And then each one of them argued the opposite. The government argued that he had no standing. The defendant argued he did have standing. And the district court said, well, I think he has standing because the government has taken. Let's say he did have standing. How much farther do you get? I mean, the opposite goes up to the Pontiac, right? And as he is dealing with those guys, he looks over, he sees the baggie with the pills in it, in the Toyota. At least that much, right? Yes. And we know that baggies and pills in baggies as opposed to pills in bottles or notes, you didn't get them at the pharmacy, that you got them on the street. Why is the car standing in the parking lot? The officer is there on some other business, maybe a related business. We don't know yet whether the Pontiac people are related to him. But he goes over there to see what's going on with the Pontiac guys. While he's there, while he's standing in the parking lot where he's entitled to stand, he looks in the car and he sees the pills. Why isn't that the case right there, even if your client has standing? Because at that point he discovers, he discovers what's mainly illegal activity or, you know, a probable cause of illegal activity. Your Honor, first of all, the officer would not have been in that position if he hadn't already illegally stopped my client. If he hadn't already... Not true, not true. He, he, he, the two guys in the, the two guys, we don't know why the two guys in the Pontiac were ducking. They might have been ducking even if your client hadn't been around. They see a policeman walking up and they have reason to duck. Or maybe they were just, you know, they dropped a quarter at that time. We don't know. You, you, the officers encounter with your client isn't the cynic one out of the ducking. Right? What, what, what happens is you, the officer's engaged with your client and as he's engaged with your client, he sees ducking going on, suspicious ducking in the Pontiac. So he says, your client stand here and he goes to check out the Pontiac. While he's there, he looks through the, he, he, he looks through the glasses of the periodic just like he's entitled to look and sees a baggie of pills. And the district court... What, what, what, you know, let's see if the client had standing. The district court took the officer to task when the officer said, I saw a bag of prescription pills. The district court did not find at all that the baggie was suspicious. The district court apparently was ruling on the gun being suspicious. We have no evidence that the baggie itself would have been suspicious because they were possibly prescription pills. When did he see the gun? I know you saw the gun at some point looking in, but it wasn't, was it the first look? The second, Your Honor. But he was still standing outside the car, right? Yes. But this time it was after he had continued to detain my client. So again, that it would be a fruit of the original. Let's say it would come to your client. So what? At that point, he's still standing outside the car. He hasn't broken into the vehicle. He hasn't opened it with the key that he got from your client. And he's still in the parking lot. He looks in. First, he sees a baggie. And second, he sees a gun. First of all, it's not... A gun that looks like it's got a sawed off serial number. First, it's not clear that he hadn't already used the key in the car at that time. When questioned when he used the key in the car, the officer did not remember. And second, the district court made no finding that that... If he used the key in the car, he doesn't have to be looking in, does he? Perhaps he thought he could use the key in the car, but that he could not open the car's door. We don't know because the district court didn't make any findings, nor did the district court find that the gun was in plain view. And the record is not entirely clear that the gun was in plain view. He testified at the suppression hearing that he saw the gun from the front passenger side. He testified at trial that the only place you could see the gun from was directly in front of the car or behind the car. The record's not clear that the gun was in plain view. It certainly isn't clear that the gun was in such plain view that one could see the obliterated serial number. And again, these are all factual findings that the district court should have made. You think a bag of pills and a gun in the front seat is not enough? If the court had found that that gun was in plain view, that would have been enough. The district court did not make that finding because the district court found no standing. The evidence was ambiguous and contradictory. The officer's own testimony with regard to seeing the gun was self-contradictory. So again, it's an issue that the district court should have resolved. So, counsel, are you saying that even though we cannot find on an alternative basis, that probable cause existed? Probable cause existed to search the car? Right. No, because the evidence was not, did not clearly support such a finding. The officer's own testimony was in contradiction. If the officer had consistently testified regarding the gun, perhaps this court could make the factual finding that the district court declined to make, because it would be a factual finding that the gun was in plain view. Well, just in clarifying your answer to Judge Rawlinson, let's say we exclude the gun and we just rely on the baggie. We know for a fact that he did see the baggie with the pills in it before he used the key, that he's, and what are you telling us that just seeing the baggie with the pills is not enough probable cause? Given the fact that it's not clear that they were prescription pills and it's not clear that they were illegal prescription pills, I would say that that is a much closer question, but that that would not support probable cause. And clearly, the officer did not believe. What would they have been? What would they have been? They could have been illegal. Vitamin pills? They could have been a number of items. And again, the district court didn't make a finding. See, you have to smile when you say that. It's hard. You have a hard time saying it with a straight face. They could have been vitamin pills. They could have been any number of things. And they could have been lawfully possessed prescription pills. People usually put vitamin pills in baggies. They usually keep them in their one-a-day bottle or whatever they come in. People put pills in baggies because they're engaged in illegal activity. Now, maybe if you look at all the baggies with all the pills in the wall and you line them up and you, you know, maybe one out of a thousand, you'd find somebody foolishly putting vitamin pills in a, in a baggie. But I think it's very rare, very rare. The district court did not appear to find it that rare. The district court found that there was no evidence that they were prescription pills. We're circuit judges. You know, we're, we're. Boy, I wish I could say that I would reserve my extra time, but it looks like I'm six minutes over. So if there are no further questions in the court. We'll take it out of your next case. We'll hear from the government. May it please the court. Bob Hannon on behalf of the United States. In this case, the district court specifically and expressly indicated that they were crediting the testimony of officer Bailey in support of the ruling, denying the motion to suppress and in crediting officer Bailey's testimony, the district court implicitly accepted that declaration, which set out in a fair amount of detail what actually occurred that afternoon. Excuse me, Mr. Gannon. Is it your position that when a district court says, I credit the testimony of a witness, that that is tantamount to a factual finding that the things a witness said are not simply true, but those are the district court's factual findings. Is that what you see? Not a specific factual finding. No, I mean, let me, I'm not trying to sell them into worship. You know, one could generally say, look, I credit testimony of a witness. It means I generally find the witness believable. It doesn't mean I believe every word, you know, if, you know, the witness testified, you know, it was a sky was blue and, you know, to allow stuff that's not central to it, you might or might not believe everything that the witness says, which is really saying on the central facts, I believe him, or specifically, you might say, I credit the witness when he says the light was green, that you might say. But that would be the. It's not really an adoption of everything the witness says, right? It would indicate that the court has listened to that testimony, that officer, and believes what that officer has said. And the inference would be that whatever that officer said regarding the facts, that the court has accepted that and found that to be true. Now, certainly, it's not equivalent to a specific express factual finding as to a particular event or a particular statement. Well, what's happened in the case is there is, in fact, I mean, I have quite a discussion with the opposing counsel, but this is not, in fact, a finding of abandonment here by the district court. So he says, the district court says no standing. And yet, we know, basically on undisputed evidence in the record, that there are two indications that, in fact, the defendant has a possessive influence in the car. He is seen getting out of the car, from the driver's side of the car, and then he has on him a key to the car. And does the absence of a finding of abandonment, does that prove unfavorable to the finding of no standing? No, it would not necessarily, unless the consideration is that abandonment is equivalent to lack of standing. Merely because he's in the car, I mean, the car could be stolen. But merely because he's in the car doesn't necessarily justify the conclusion that he's got a possessory interest in it. Now, certainly, when the additional fact that there's a key in his pocket is later found to be the case, of course, that's much later in the chronology of events. That certainly would- It's not later than the hearing. I mean, by the time of the hearing, that evidence is before the court as well. So there's evidence he's sitting in the car that the court is aware of. And the court is also aware of the fact that he's got in his pocket a key to the car. And those two things together would seem to suggest a possessor interest. And I mean, this is the question, this is what gives me pause in this case. Given those facts in the record, isn't this the court not required to find abandonment before it can find lack of standing? Well, by themselves, certainly they would indicate a possessory interest. However, this is in the context of repeated denials on the part of the defendant as to the ownership of the car. Not only does he tell the officer that he doesn't own it, he's saying he doesn't know who in fact does own the car. Okay, so he does say that. Can the district court simply ignore the other evidence of that he, in fact, at some point had a possessory interest? Is he not required to make a finding of abandonment? Or do you think he implicitly made a finding of abandonment? Well, by implication, one could conclude, I think reasonably, that he did abandon. But I don't even think the court would have to go there because of what actually the court was focusing on. The ruling was very short, we know that. But in the ruling, the court was definitely focusing on whether or not the defendant had said anything either in the declaration or in his testimony during the suppression hearing that would support the conclusion of a reasonable expectation of privacy. So the focus was actually on that standing, if you will, as defined or equivalent to a reasonable expectation of privacy. And the court felt, after hearing all the testimony, reviewing the declaration, felt that that had not been demonstrated by the defendant. Now, there's nothing to indicate that the court, and I have no reason to believe that the court ignored the fact that the key was in his pocket and that he was seen in the driver's seat. Because- Well, you think what the court's saying is that, well, he's the owner of the car, but he is still and has been steadfastly denying that he has any interest in the car. Is that what the court's relying on? Yes, the defendant testified that it was Mendoza's car at the suppression hearing. Not only did he say, in his declaration, said nothing about the ownership and the testimony of Officer Bailey at the suppression hearing was he denied knowing the owner and he denied owning it himself, but on cross-examination, it was elicited that it wasn't even his car, it was Mendoza's car. He admitted that. So the court, having heard that, he- Who admitted? The defendant. The defendant, okay. At the suppression hearing. So the court, hearing the recitation of the denials on April 13th, and the defendant in front of the court saying, yeah, it was Mendoza's car. Now, notwithstanding that, there was evidence in the record at the suppression hearing that ultimately, at the time of the inventory search, the defendant told the officer, changed his mind, he said, it's my car. But apparently, and government would argue that that was considered by the court. But the way the testimony was that he really did not have a possessory interest. And even if he did, he abandoned it. So is it your position that the district court made an implicit finding of abandonment or didn't need to make a finding of abandonment at all? Didn't need to. Didn't need to. Did not need to. I was hoping you'd give the other answer. I mean, I can understand the district court saying, look, he's here testifying that he has no interest in this car. And he's asking me to suppress stuff that was found in it. And I'm going to hold him to his protestations that he has no interest. He is asserting facts that deny him standing. But it seems to me that has to be an abandonment if he owned, if in fact he owned the car. Well, certainly the court was looking at what occurred on April 13th. And his actions would justify the conclusion that he abandoned it at that time. And then on top of that, of course, at the hearing, then he disavows any interest. Certainly the court could have made an express finding of fact as to abandonment. And I suppose to the extent the court says he's not demonstrated standing. And in the same sentence or a sentence before or after that, in that same context, he's talking about a reasonable expectation of privacy. Well, I'm curious if your original answer was, no, he doesn't have to find an abandonment. Why not? Why? Because he did not, because he did not demonstrate any possessory interest at the outset. I mean, you can't abandon something you don't have to begin with. And if the court felt that because he, his statements at the scene and his testimony, that he hadn't even demonstrated possessory interest, why even go to the point of questioning whether or not that was in fact abandoned? And what about the key? The key, again, I would agree with the court that the key is some indication of possessory interest in the automobile. However, in the context of all the other facts, I mean, a person can, again, the analogy of a stolen car, a person can have a key to a stolen car. Do they have a reasonable expectation of privacy? I think that it's a bit of a problem. By itself, certainly one could conclude that that is a reasonable inference. But in the context of all the testimony and the declaration in this case, the government would submit that that simply falls by the wayside. Particularly because, I'm sorry. Put your position on the viability of an alternative holding this court that there was probable cause to search the vehicle. It was the position that the government took at the time of the hearing that, at the time of the suppression hearing, that Officer Bailey, when he first arrived at that scene, had a certain amount of knowledge. And clearly, the events which unfolded gave him an increasing body of knowledge, which would support that specific finding of reasonable suspicion. And then ultimately, the probable cause. Could we make that holding in view of the fact that the district court did not reach that issue? Well, it's my recollection that the court, again, the ruling was rather brief, but did say that notwithstanding the standing issue, that the court credited Officer Bailey's testimony and found that he had reasonable suspicion to do what he did that day. That's a different issue than probable cause. Well, to the extent that he has found and concluded in his ruling that the officer's actions were justified that day. And of course, the officer seized the gun from the car without expressly using the term probable cause, the government argued that implicitly when he, that is the district court, said that his actions were justified, that again, implicitly, he was making that finding. So now you get the answer Judge Canby wants. As to probable cause for the arrest of the defendant. Thank you. What's the, at what point was the defendant detained? And what is the relation between that issue and the search of the car? The defendant was detained when Officer Bailey asked him to sit on a curb. Okay, so he needed reasonable suspicion for that. What, if he didn't have it, is the search of the car invalid? To the extent that the district court credited Officer Bailey's testimony about seeing the pills in the clear plastic bag on the center console and the gun in plain view before he entered the car, saw the pills twice before he saw the gun. And knew that it was a violation of California law for someone to possess a firearm with an altered serial number and could see from outside the car that the serial number was, in fact, altered, that he would have had probable cause to seize that gun from him. And that wouldn't be tainted by an illegal carry stop? Well, the government's position that Officer Bailey didn't do anything illegal at all. Well, I understand that. But I said, if they did not have reasonable suspicion at the time that they told the defendant to sit down, does that taint a subsequent probable cause search of the vehicle? No, because under the doctrine of inevitable discovery and the automobile exception, if a California police officer or any officer sees what is, in effect, equivalent to contraband in a weapon, he can seize it, particularly a firearm. Okay, thank you. Case decided, you're abstained for a minute. Thank you. Here, argument next in Marcellino versus Lamarck.
judges: Canby, Kozinski, Rawlinson